

# NUMBER 13-20-00413-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                          Appellant,

v.

ERIC SCARBERRY,                                                               Appellee.

### On appeal from the 156th District Court
### of Bee County, Texas.

## DISSENTING MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Dissenting Memorandum Opinion by Justice Tijerina**

Because I disagree with the majority's conclusion that the trial court properly

suppressed Scarberry's oral statement to police, I respectfully dissent in part.[1]

---

[1] I agree with the majority's conclusion that the trial court should not have suppressed evidence stemming from the search warrant, and I concur with the majority's disposition reversing the trial court's suppression of such evidence.

Detective Levine testified that he "bumped into" Scarberry in jail and asked if he wanted to give a statement to the Chief of the Coastal Bend College, and Scarberry said he did not want to give a statement. According to Detective Levine, Scarberry then "made a comment that he . . . had been involved with [the burglary], but he didn't want to discuss it further or give an interview to Chief Behr," and Detective Levine, "left it at that." Detective Levine repeated on redirect examination by Scarberry that "All I asked him is if he wished to provide us—if he wanted to give his side of the statement—of the story to Chief Behr and that I would make arrangements to have that happen since Chief Behr uses my office for the interview." Detective Levine specified that he does not *Mirandize* the inmates prior to asking if they would like to make a statement because he is "not asking them any question that would cause them to incriminate themselves." Detective Levine explained:

> I was just going to say that to save anyone who is in custody, the jail staff, everyone else's time, we ask them if they wish to provide a statement. He chose not to. That was the end of it, other than the comment that he made, and that was after I asked him if he wanted to talk to Chief Behr.

The majority concludes that Detective Levine's question asking Scarberry whether he wanted to give a statement to the Chief was a custodial interrogation. I disagree.

As noted by the majority, the Texas Court of Criminal Appeals held that the question, "[h]ave you been shot?" was "simply a yes or no question" and [n]either a 'yes,' nor a 'no' [to the question] would have been incriminating." *Batiste v. State*, No. AP-76600, 2013 WL 2424134, at *15 (Tex. Crim. App. June 5, 2013) (not designated for publication) (citing *State v. Riggs*, 987 P.2d 1281, 1283–84 (Utah Ct. App. 1999), *abrogated on other grounds by State v. Levin*, 144 P.3d 1096 (Utah 2006)). The majority emphasizes that as

2

an unpublished case, *Batiste* has no precedential value, but I find the holding of the Texas Court of Criminal Appeals instructive to this particular issue. *See id.*

Likewise, in another unpublished Texas case, cited by the majority, *Cruice v. State*, the appellate court determined that the question, "do you want to give a written statement," was "an invitation to engage in interrogation," but was not itself interrogation. No. 14-96-01362-CR, 2000 WL 328197, at *3 (Tex. App.—Houston [14th Dist.] Mar. 23, 2000, pet. ref'd) (mem. op., not designated for publication). Again, the majority is unpersuaded by this Texas case because it is not published. Instead, the majority relies on authority from Hawaii, *State v. Eli*, to conclude that "[b]y specifically addressing the crime Scarberry had been accused of and then offering Scarberry an opportunity to give his version of events, Levine should have known that any actor, guilty or innocent, would have the urge to minimize his involvement." 273 P.3d 1196, 1208–09 (Haw. 2012).

I disagree with this reasoning. And given a choice whether to rely on authority from Hawaii when Texas courts—particularly the Texas Court of Criminal Appeals—have specifically stated otherwise, I am swayed by the Texas authority. "Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Garcia v. State*, 553 S.W.3d 645, 647 (Tex. App.—Texarkana 2018, pet. ref'd) (citing *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd))). Thus, taking guidance from *Batiste*, I would conclude that Detective Levine did not interrogate Scarberry under these facts because his

3

question merely required either a yes or no answer. *See* 2013 WL 2424134, at *15; WL 328197, at *3. Moreover, I find the reasoning in *Cruice* logical and applicable to the facts here. *See* 2000 WL 328197, at *3

Although the *Batiste* court stated that a "questions mandated by public safety" are "outside the constitutional definition of interrogation" and relied on this authority to conclude that the question asked was not an interrogation, I still find the reasoning in *Batiste* pertinent, and I am convinced that the reasoning in *Batiste* can be instructive to these facts. *See Batiste*, 2013 WL 2424134, at *14. The *Batiste* court emphasized that, "the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *See id.* Therefore, the only question before us is whether Detective Levine should have known his questions were reasonably likely to elicit an incriminating response. *See id.*

The three main components of Detective Levine's inquiry merely required either a yes or no answer. *See Batiste*, 2013 WL 2424134, at *15; *Cruice*, 2000 WL 328197, at *3. Scarberry could have replied, "No, I do not want to tell my side of the story, make a statement, or talk to the Chief about the burglary" or he could have answered, "Yes." Neither question required an incriminating answer. Therefore, I disagree that Detective Levine should have known the questions were reasonably likely to elicit an incriminating response from Scarberry. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *see also Batiste*, 2013 WL 2424134, at *15; *Cruice*, 2000 WL 328197, at *3. Accordingly, I would

4

sustain the State's second issue, and I would reverse the trial court's suppression of Scarberry's statement to Detective Levine. For these reasons I respectfully dissent in part.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
9th day of June, 2022.